UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS FELIPE RODAS URRUGUTIA (A-201-414-716),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CENTRAL VALLEY ANNEX, et al.,<br><br>Respondents. | No. 1:26-cv-6733 DAD CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Luis Felipe Rodas Urrugutia (A-201-414-716), a native and citizen of Guatemala who is proceeding through counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner first entered the United States in 2018, was encountered by border officials and deported. In 2021, petitioner again entered the United States, was detained by border officials, and he informed them he was afraid to return to Guatemala. Shortly after, petitioner was released under Immigration and Customs Enforcement ("ICE") supervision. On July 8, 2026, petitioner appeared for a routine check-in with ICE and was re-detained.

This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition be denied.

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND

Petitioner is a 31 year old native and citizen of Guatemala. (ECF No. 1 at 3.) Petitioner first entered the United States in 2018, was encountered by border officials and deported. (Id. at 5.) Immigration records reflect that petitioner was issued a notice and order of expedited removal on December 7, 2018, and was removed to Guatemala on December 14, 2018. (ECF No. 7-1 at 2.) In 2021, petitioner again entered the United States, was detained by border officials, and he informed them he was afraid to return to Guatemala. (ECF No. 1 at 5.) Immigration records state that petitioner was served with a notice of intent/decision to reinstate prior order with reasonable fear on July 25, 2021.[2] (ECF No. 7-1 at 2-3.) On September 21, 2021, petitioner was served with an Order of Supervision ("OSUP") and released from ICE custody. (Id. at 3.)

On July 8, 2026, petitioner appeared for a routine check-in with ICE and was re-detained. (ECF No. 1 at 3.) On July 8, 2026, petitioner was provided an informal interview upon revocation of the order of supervision under 8 C.F.R. §§ 241.4(l), 241.13(i). (ECF No. 10-1 at 1-2.)

On August 24, 2026, petitioner had a reasonable fear hearing before an immigration judge who found petitioner did not show a credible fear of persecution or torture if removed to Guatemala. (ECF No. 8.)

## II. PROCEDURAL BACKGROUND

On August 24, 2026, petitioner filed the petition for writ of habeas corpus.[3] (ECF No. 1.) On September 4, 2026, respondents timely filed a response to the petition, along with three

---

[2] Petitioner claims he re-entered the United States in October 2021, but immigration records annotate his arrest and detention on July 25, 2021. The Court need not resolve these differences in dates because they do not impact analysis of petitioner's claims herein.

[3] Petitioner appended a document entitled, "Exhibits to Petitioner's Temporary restraining Order, Preliminary Injunction, and Writ of Habeas Corpus Supported by Declaration of Counsel," claiming counsel made his declaration in support of petitioner's motion for a temporary restraining order, preliminary injunction, and writ of habeas corpus, and referenced an Exhibit A which was purportedly a declaration of his associate counsel submitted as evidence of irreparable injury, along with its own exhibits B-L. (ECF No. 1-1.) But petitioner did not file a separate motion for temporary restraining order or preliminary injunction, and no declaration by associate counsel or its appended exhibits were provided. (See Docket.) Petitioner subsequently filed declarations by counsel, but neither declaration provides the exhibits referenced in ECF No. 1-1, and both declarations provided petitioner's alien registration number. (ECF Nos. 5, 6.)

exhibits. (ECF Nos. 7, 7-1, 7-2, 8.) On September 8, 2026, petitioner filed a traverse. (ECF No. 9.) On September 8, 2026, respondents filed a motion to accept the late-filed copy of petitioner's order of supervision revocation, along with the order of supervision revocation. (ECF Nos. 10, 10-1.) On October 1, 2026, the Court granted the motion, and petitioner was granted seven days to file a supplemental response, and respondents were granted seven days to file a reply. (ECF No. 11.) On October 8, 2026, petitioner filed a supplemental response. (ECF No. 12.) Respondents did not file a reply. (See Docket.)

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his continued detention based on the violation the Fifth Amendment Due Process Clause. (ECF No. 1 at 18-19.) In the response to the petition, respondents argue that even if ICE did not comply with 8 C.F.R. § 241.13(i), the remedy should be limited to release on the same order of supervision that governed before July 2026. (ECF No. 7 at 1.) In the traverse, petitioner contends that because respondents concede the Department of Homeland Security ("DHS") failed to produce evidence showing applicable regulations were followed, petitioner should be

immediately released subject to the same supervision conditions previously ordered. (ECF No. 9 at 1.) On September 8, 2026, respondents filed the notice of revocation of release, and informal interview. (ECF No. 10-1.)

"This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). In the instant case, petitioner received a notice and order of expedited removal on December 7, 2018, and was removed (ECF No. 7-1 at 2), at which time petitioner did not claim a fear of returning to Guatemala. Accordingly, petitioner's order of expedited removal became final on the day it was entered on December 7, 2018. See 8 U.S.C. § 1225(b)(1)(A)(i) (immigration officer shall order removal without further hearing or review unless that person indicates intent to apply for asylum or fear of persecution).

A few years later, petitioner re-entered the country, and was arrested and re-detained by border patrol on July 25, 2021 and issued a notice of intent/decision to reinstate prior order with reasonable fear. (ECF No. 7-1 at 2-3.) On September 21, 2021, petitioner was released on an Order of Supervision. (Id. at 3.) Petitioner's 90 day removal period has expired.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."

8 C.F.R. § 241.13(i)(2).

The Notice of Revocation of Release states that petitioner's release was revoked because petitioner violated his Order of Supervision by receiving a conviction for misdemeanor driving under the influence ("DUI") on January 19, 2023. (ECF No. 10-1 at 1.) Because petitioner violated the conditions of his Order of Supervision by committing this offense, ICE may detain petitioner for six months. See 8 C.F.R. § 241.13(i)(1). Petitioner has been detained less than six months; therefore, petitioner's detention is lawful.

Further, petitioner contends that his due process rights were violated because he was deprived of liberty without first being provided notice and a meaningful opportunity to be heard. (ECF No. 1 at 7.)

8 C.F.R. § 241.13(i)(3) requires a prompt interview following re-detention:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.

8 C.F.R. § 241.13(i)(3).

Here, appended to the Notice of Revocation of Release is a document titled, "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241(l); 8 C.F.R. § 241.13(i)." (ECF No. 10-1 at 2.) This document states that on July 8, 2026, Officer A. Castaneda conducted an informal interview of petitioner to afford him an opportunity to respond to the reasons for revocation of his Order of Supervision stated in the notification letter. (Id.) This document states that petitioner did not provide a written statement or documents, but records petitioner's oral response regarding the reasons for revocation: "Subject stated that the offense was 4 years ago but understands." (Id.) As noted above, the Notice of Revocation of Release explained that petitioner's release was revoked because he violated a condition of his release. (Id. at 1.)

Petitioner objects that the Notice of Revocation does not bear a date or the signature of the

officer issuing the Notice. However, petitioner does not dispute that he received an informal interview following his arrest, and does not deny the statement attributed to him in the form provided. Unlike a detention under 8 C.F.R. § 241.13(i)(2), which provides that only certain officials are authorized to revoke release, a revocation based on a violation of supervisory conditions does not include the same requirement. See 8 C.F.R. § 241.13(i)(1). Thus, the Court finds that the absence of a signature on the Notice of Revocation is of no consequence.

The record demonstrates that petitioner was provided an informal interview on July 8, 2026, the same day petitioner was re-detained. (ECF No. 10-1 at 2.) Therefore, this Court finds that petitioner was notified of the reasons for the revocation of his release and promptly provided with an informal interview following his re-detention to respond to the reasons for the revocation of his Order of Supervision. For these reasons, this Court finds no violation of petitioner's right to due process and recommends that the petition be denied.

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be DENIED.
2. The Clerk of the Court be directed to enter judgment in favor of respondents and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 20, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

1/urru6733.157.2241.imm.den